1  MCDONALD CARANO WILSON LLP
   KAARAN E. THOMAS (NV Bar No. 7193)
2  ZACH WADLÉ (NV Bar No. 8711)
   100 W. Liberty Street, 10th Floor
3  P.O. Box 2670
   Reno, NV, 89505
4  Telephone: (775) 788-2000
   Facsimile: (775) 788-2020
5  Email: kthomas@mcdonaldcarano.com
   Attorneys for Debtors and Debtors-in-Possession
6

**E-FILED MARCH 9, 2007**

7              **UNITED STATES BANKRUPTCY COURT**

8                    **DISTRICT OF NEVADA**

9  In re:                                    )
                                             )
10 DESERT POWER, LP, a Nevada Limited        )   **Case Nos. 06-50777 –N-GWZ**
   Partnership, et. al.                      )   **Through   06-50780-N-GWZ**
11                                           )
              Debtors in Possession          )   **Chapter 11**
12                                           )   **Administratively Consolidated**
                                             )   **Under No. 06-50777-N-GWZ**
13 _____          )
                                             )
14 DESERT POWER, LP, a Nevada Limited        )   **ADV. NO. _____**
   Partnership and DP LEASING CO., LLC, a    )
15 Nevada Limited Liability Company          )
                                             )   **COMPLAINT FOR DECLARATORY**
16            Plaintiffs                      )   **JUDGMENT DETERMINING VALIDITY,**
                                             )   **PRIORITY AND EXTENT OF LIENS**
17 v.                                        )   **AGAINST PROPERTY OF THE**
                                             )   **ESTATES OF DESERT POWER LP AND**
18 MORGAN STANLEY SENIOR                     )   **DP LEASING CO., LLC; TO ASSERT**
   FUNDING, INC. AS AGENT, AS                )   **COUNTERCLAIMS AGAINST**
19 SUCCESSOR IN INTEREST TO                  )   **LIENHOLDERS PROENERGY**
   LASALLE BANK, N.A.,                       )   **SERVICES, LLC , PROENERGY**
20 TOOELE COUNTY, CENTRY                     )   **CRAFTS, INC. AND CENTRY, TO**
   CONSTRUCTORS & ENGINEERS,                 )   **OBJECT TO THE TAX LIENS OF**
21 STANTEC CONSULTING, PROENERGY             )   **TOOELE COUNTY, PCE**
   SERVICES, LLC, PROENERGY CRAFTS,          )   **CONSTRUCTORS, INC., SULZER**
22 INC. ROBERTSON-CECO                       )   **HICKHAM AND ANDERSON AND TO**
   CORPORATION, PCE CONSTRUCTORS,            )   **AVOID AND PRESERVE THE LIEN OF**
23 INC., UTAH FABRICATION, CST               )   **EVAPTECH**
   INDUSTRIES, AQUATECH                      )
24 INTERNATIONAL CORPORATION, THE            )
   ATLANTIC GROUP, PAUL ANDERSON,            )
25 ALLIED POWER GROUP LLC,                   )
   EVAPTECH                                  )
26                                           )

27      Plaintiffs Desert Power, LP ("DESERT POWER") and DP Leasing Co., LLC

28 ("LEASING") (collectively "DEBTORS") file this Complaint seeking a declaratory judgment as to

1

the validity and priority of liens against property of their estates, and in connection therewith assert counterclaims against lienholders Proenergy Services, LLC, Proenergy Crafts, Inc. and CEntry Constructors & Engineers; object to the liens asserted by Tooele County, PCE Constructors, Inc. and Paul Anderson and seek to avoid and preserve the lien of Evaptech and in support allege as follows:

## JURISDICTION AND VENUE

1. This adversary proceeding arises under the Bankruptcy Code and arises in, and relates to, the Chapter 11 case(s) of DEBTORS.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157, 11 U.S.C. §§ 105, 363, 541, 544, 547, 549 and 551 and Bankruptcy Rules 7001(1), (2) and (9).

3. This is a core proceeding as provided in 28 U.S.C. § 157(b) (2) (B), (C) (F) (K) (N) and (O).

4. Venue is proper in this District under 28 U.S.C. § 1409.

## THE PARTIES

### Plaintiffs

5. Debtor DESERT POWER, LP ("DESERT POWER") is a Nevada limited partnership.

6. Debtor DP LEASING CO., LLC ("LEASING") is a Nevada limited liability company.

7. DESERT POWER and LEASING are related and affiliated companies. DESERT POWER owns real property and improvements in Rowley, Utah (the "Real Estate") that are used in the business of electrical power generation.

8. LEASING is in the business of owning and leasing power generation capital equipment described on Exhibit "B" to this Complaint (the "Equipment"). The Equipment was leased or intended to be leased to DESERT POWER by LEASING d/b/a/ Rowley Leasing. The

2

Equipment was intended for use in connection with improvements to DESERT POWER's Real Estate. The lease has been suspended prior to commencement of the DEBTORs' bankruptcies.

9. The bankruptcies of DESERT POWER and LEASING are jointly administered under the above captioned Chapter 11 case number.

### Defendants

10. CENTRY CONSTRUCTORS & ENGINEERS, INC. ("CENTRY") filed a lien against the Real Estate in the amount of $1,154,904.20 and proofs of claim against the DEBTORS in the amount of $705,884.82.

11. TOOELE COUNTY ("COUNTY") has asserted tax liens against the Real Estate. COUNTY has not filed a proof of claim.

12. LASALLE BANK, N.A. (subsequently assigned to Morgan Stanley Senior Funding, Inc. as Agent)("BANK") filed a Deed of Trust against the Real Estate and UCC-1 financing statements against the personal property of DEBTORS, including the EQUIPMENT. BANK did not file a proof of claim; however, BANK is scheduled as holding an allowed secured claim in the amount of $29,124,624.20.

13. PAUL B. ANDERSON ("ANDERSON"), a consulting geologist, filed a Notice of Lien Interest against the Real Estate in the amount of $38,935.54 and a proof of claim against DESERT POWER.

14. ALLIED POWER GROUP ("ALLIED") filed a lien against the Real Estate and a proof of claim for the amount of $117,939.97.

15. AQUATECH INTERNATIONAL CORPORATION ("AQUATECH") filed a lien against the Real Estate proof of claim in the amount of $457,297.52.

16. THE ATLANTIC GROUP ("ATLANTIC") filed a lien against the Real Estate and a proof of claim in the amount of $293, 022.47.

3

17. CST INDUSTRIES ("CST") filed a lien against the Real Estate and a proof of claim in the amount of $65,291.16.

18. EVAPTECH filed a lien against the Real Estate. EVAPTECH has not filed a proof of claim.

19. ROBERTSON-CECO CORPORATION ("CECO") filed a lien against the Real Estate and a proof of claim in the amount of $506,115.39.

20. PCE CONSTRUCTORS ("PCE") filed a lien against the Real Estate and a proof of claim in the amount of $4,610,804.30.

21. PROENERGY SERVICES, LLC and PROENERGY CRAFTS, INC. (collectively "PROENERGY") filed liens against the Real Estate and proofs of claim in the amount of $481,506.31 and $41,592.86 respectively.

22. STANTEC CONSULTING ("STANTEC") filed a lien against the Real Estate in the amount of $32,298.85; however, upon information and belief this lien has been settled. STANTEC did not file a proof of claim.

23. UTAH FABRICATION ("FABRICATION") filed a lien against the Real Estate in the amount of $169,388.00. FABRICATION has not filed a proof of claim.

24. SULZER HICKHAM, INC. ("HICKHAM") filed a lien against DESERT POWER in the real property records of Harris County, Texas. HICKHAM proof of claim against DESERT POWER in the amount of $297,543.00.

**GENERAL ALLEGATIONS**

25. DESERT POWER and LEASING commenced their cases on October 23, 2006 and are Debtors in Possession before this Court. No Chapter 11 Trustee or examiner has been appointed.

26. DESERT POWER owns a fee simple interest in certain real property in Tooele County, Utah described on the Title Report attached hereto as Exhibit "A"(the "Real Estate"). The

4

Real Estate constitutes real property consists of approximately eight acres together with appurtenant rights and is located approximately 50 miles west of Salt Lake City, Utah

27.    The Real Estate is improved by portions of a natural gas fired power plant (the "Plant"). The Plant operated as a simple cycle power plant from 2001 to 2004. In 2004 the Plant was shut down due to lack of profitability. The original contractor for the Plant was Revak Energy, Inc. from LaPorte, Texas ("Revak"). Since Revak was not licensed as a Utah engineer or contractor Revak hired CENTRY to do the design engineering and field work in Utah except for work relating to the placement and installation of the turbines. Revak failed to complete the Plant on time and on September 15, 2001; DESERT POWER terminated Revak and entered into a direct contract with CENTRY for completion of the contract.

28.    Upon completion, CENTRY claimed that it had not been paid for certain invoices and claims that had been submitted to DESERT POWER for payment. DESERT POWER in turn claimed that it had been overcharged by CENTRY and that some of CENTRY's work was nonconforming and defective. CENTRY filed a Notice of Lien on December 4, 2001. CENTRY also commenced a lawsuit in Tooele County, Utah in early 2002. At the time of filing the lawsuit and CENTRY's lien involved claims of Revak and various subcontractors. All of these third party claims have been fully settled and released. Remaining claims relate to CENTRY's claim for payment of approximately $216,000.00 for payment under their contract with DESERT POWER, the counterclaims asserted by DESERT POWER and a "wrongful lien" claim by DESERT POWER against CENTRY.

29.    DESERT POWER's counterclaims total $350,541.12 as compared to CENTRY's claim of $216,000.00. DESERT POWER's wrongful lien claim arises out of the fact that CENTRY filed a claim of $1,154,904 against the Real Estate and that it has refused to reduce its lien claim, with full knowledge of DESERT POWER's financial difficulties, even though CENTRY's claims have admittedly been substantially reduced. Utah statute U.C.A. 38-1-25 contains an abuse of lien right penalty equal to twice the amount by which the wrongful lien exceeds the amount actually due or the actual damages, whichever is greater.

30.    COUNTY filed tax liens against the Property, which DESERT POWER has disputed based upon a valuation dispute. These tax claims have not been resolved.

5

31.    In 2005 DESERT POWER determined to upgrade the Plant to qualify for a Power Purchase Agreement ("PPA") with PacifiCorp as a "qualifying facility" as defined under applicable federal and state law. In furtherance of its plan, in July 2005 DESERT POWER entered into contracts with engineers and PCE as contractor to build the Plant improvements.

32.    To obtain construction financing DESERT POWER and LEASING, together with other Debtors and affiliates, borrowed funds from BANK pursuant to a Credit Agreement dated as of August 26, 2005 and amended from time to time (the "Credit Agreement"). LEASING utilized a portion of the funds obtained from BANK to purchase certain additional items of equipment for the Plant, described on Exhibit "B".

33    BANK recorded its deed of trust lien, securing payment of all amounts due under the Credit Agreement, against the Real Estate and Plant on September 6, 2005. On August 29, 2005 BANK filed its UCC-1 financing statements against LEASING and DESERT POWER reflecting a security interest in all of DESERT POWER and LEASING's "now owned or existing and hereafter acquired or arising accounts, chattel paper, contracts, deposit accounts, commercial tort claims, documents, equipment, general intangibles, goods, health-care insurance receivables, instruments, inventory, investment property, books and records, letter of credit rights, supporting obligations and records together with all accessions to, substitutions for and replacements, products and proceeds of all of the foregoing."

34    STANTEC recorded a lien in the amount of $38,298.89 against the Real Estate on September 22, 2005. Upon information and belief the lien claim has been settled and the lien should be released.

35.    PROENERGY recorded liens in the amount of $510,611.35 against the Real Estate on May 12, 2006. DESERT POWER objects to PROENERGY's claim and asserts counterclaims against PROENERGY as set forth below in an amount in excess of the lien amount.

36    CECO recorded a lien against the Real Estate in the amount of $506,115.39 on June 12, 2006.

37.    PCE recorded a lien against the Real Estate in the amount of $4,610,804.30 on June 21, 2006.

38.    FABRICATION recorded a lien against the Real Estate in the amount of $169,388.00 on July 11, 2006.

6

39.    CST recorded a lien against the Real Estate in the amount of $65,291.16 on August 28, 2006.

40.    AQUATECH recorded a lien against the Real Estate in the amount of $457,297.52 on September 8, 2006.

41.    ATLANTIC recorded a lien against the Real Estate in the amount of $291,793.00 on September 12, 2006.

42    ANDERSON recorded a lien against the Real Estate in the amount of $35,113.72 on September 25, 2006. ANDERSON did not provide materials or services to the Real Estate but instead provided consulting services. DESERT POWER asserts, upon information and belief, that the claim does not qualify for the benefits afforded mechanics' lien claimants

43.    ALLIED recorded a lien against the Real Estate in the amount of $117,939.97 on September 28, 2006

44    HICKHAM recorded a lien in the real property records of Harris County, Texas pursuant to § 53 of the Texas Property Code for work performed on rotors and stators owned by LEASING on October 20, 2006. Neither DESERT POWER nor LEASING own real property in Harris County, Texas. The lien, attached to the HICKHAM proof of claim, states that it is against Calpine.

45    EVAPTECH recorded a lien against the Real Estate in the amount of $576,882.00 on November 13, 2006. The filing violated the automatic stay which went into effect on October 23, 2006. EVAPTECH did not seek modification of the automatic stay or file a Notice of Perfection of its lien interest with the bankruptcy court in accordance with 11 U.S.C. Section 546 (b). Accordingly the lien is invalid as more fully set forth below

**OBJECTION TO CLAIMS AND COUNTERCLAIMS AGAINST LIEN CLAIMANTS**

46.    DESERT POWER restates the allegations of paragraphs 1-45 above as though fully set forth herein.

47    DESERT POWER has not audited the invoices of all lien claimants and reserves the right to file objections to the amounts claimed by each of the Lien Claimants upon further review of the documentation supporting their claims

7

1    48.    Lien claimants ANDERSON, HICKHAM, CENTRY and PROENERGY have filed

2    a proofs of claim in this court and have submitted themselves to the jurisdiction of this court for

3    purposes of determining DESERT POWER's objections to their claims and counterclaims pursuant

4    to 28 U.S.C. §157 (b)(2)(C).

5    49.    **COUNTY objection**

6    a.    Prior to the Petition Date DESERT POWER appealed to the Tooele County Board

7    of Equalization seeking reduction in the taxes assessed by COUNTY. True and correct copies of

     the documents evidencing the dispute are attached hereto as Exhibit "C". COUNTY has filed tax

8    liens against the Real Estate in the amounts of

9        2003: $268,325 plus interest, penalty and costs

10       2004: $550,000 plus interest, penalty and costs

11       2005: $110,163.12 plus interest penalty and costs

12       2006: $235,400.52 plus interest penalty and costs

13       DESERT POWER's appeal seeks a reduction in taxes based on the following appraisal of

14   the fair marked value of the taxable assets:

15       2003 - Land $4,120.00 Improvements $19,984.00 Personal Property $4,975,896.00

16       2004 - Land $4,244.00 Improvements $17,583.00, Personal Property $4,378,173.00

17       2005 - Land $4,371.00 Improvements $13,583.00, Personal Property $3,382,046.00

18       b.    DESERT POWER objects to COUNTY's tax liens and claims to the extent they

19   reflect an appraisal for tax purposes that exceeds these amounts and that exceeds comparable

20   valuations for the year 2006.

21       50.    **PCE Objection**

22       a.    DESERT POWER objects to PCE's lien and claim on the basis that the claim

     includes overcharges for labor and material. DESERT POWER has not completed its audit of

23   PCE's invoices submitted for work on the Plant. However, based on a preliminary review

24   DESERT POWER asserts that PCE has overcharged DESERT POWER for labor and material. In

25   addition, PCE has asserted that certain equipment consisting of computers, telephones, scaffolding

26   and office equipment, which DESERT POWER paid for belongs to PCE.

27       b.    Because DESERT POWER has not completed its audit of the PCE invoices

28   DESERT POWER reserves the right to amend and specify its objection to the PCE claim. DESERT

8

1  POWER objects to the PCE claim to the extent it asserts ownership over assets that DESERT

2  POWER has paid for and to the extent that it reflects charges for labor and material that are

3  excessive or are not covered under DESERT POWER's contract with PCE.

4      51.  **ANDERSON objection**

5      a.  DESERT POWER objects to the lien claim of ANDERSON on the basis that

6  ANDERSON does not qualify as a mechanics' lien claimant under UCA§38-1-3 which provides:

7      § 38-1-3. Those entitled to lien--What may be attached

*Contractors, subcontractors, and all persons performing any services or furnishing or renting any materials or equipment used in the construction, alteration, or improvement of any building or structure or improvement to any premises in any manner and licensed architects and engineers and artisans who have furnished designs, plats, plans, maps, specifications, drawings, estimates of cost, surveys or superintendence, or who have rendered other like professional service, or bestowed labor, shall have a lien upon the property upon or concerning which they have rendered service, performed labor, or furnished or rented materials or equipment for the value of the service rendered, labor performed, or materials or equipment furnished or rented by each respectively, whether at the instance of the owner or of any other person acting by his authority as agent, contractor, or otherwise except as the lien is barred under Section 38-11-107 of the Residence Lien Restriction and Lien Recovery Fund Act. This lien shall attach only to such interest as the owner may have in the property.*

16      b.  ANDERSON is a consulting geologist who performed pump tests on wells located

17  on the Real Estate. Under the Utah statute cited above, ANDERSON's lien would at most attach to

18  the wells that he tested.

19      DESET POWER prays that the ANDERSON lien be expunged and that their lien claim be

20  disallowed as a secured claim and allowed as an unsecured claim to the extent no objections are

21  raised after audit.

    52.  **HICKHAM Objection**

22      a.  DEBTORS object to the HICKHAM lien because it does not attach to any of

23  DEBTORS' assets. HICKHAM filed its lien for $297,543.00 in the real property records of Harris

24  County Texas. DEBTORS do not own real property in Harris County, Texas. For this reason the

25  HICKHAM lien did not attach to either the Real Estate or the LEASING equipment. The Texas

26  Property Code, V.T.C.A., Property Code § 53.021 provides:

27      *§ 53.021. Persons Entitled to Lien*
    *(a) A person has a lien if:*

28

9

*(1) the person labors, specially fabricates material, or furnishes labor or materials for construction or repair in this state of:*
*(A) a house, building, or improvement;*
*(B) a levee or embankment to be erected for the reclamation of overflow land along a river or creek, or*
*(C) a railroad;*

b.      Because the Real Estate is not located in Texas the lien is not authorized by the Texas Property Code.

WHEREFORE, DESERT POWER and LEASING pray that the HICKHAM lien be expunged and that their lien claim be disallowed as a secured claim and allowed only as an unsecured claim to the extent the amounts claimed are acceptable after audit.

53.      **CENTRY Objection and Counterclaim**

a.      CENTRY's claim against DESERT POWER itemizes $208,163.00 of unpaid invoices which DESERT POWER has disputed. The balance of CENTRY's claim according to their Proof of Claim includes interest on the amounts CENTRY is owed by DESERT POWER of $124,273.72; interest owed under the Revak /CENTRY contract of $90,797.57 and attorneys' fees of $282,649.85.

b.      DESERT POWER disputes the following CENTRY invoices as overcharges: (1) Invoice $1101211 amount $4,899.00, (2) Invoice #0102201 amount $72,613.50; (3) Invoice $1201103 amount $627.95; (4)Invoice #120115 amount $1,649.80;(5) Invoice #1201102 amount $752.90; (6) Invoice $1101210 amount $29.10 and (7) Invoice #0801217 amount $615.63 for a grand total of $81,187.87.

c.      DESERT POWER has challenged the charges on the following invoices: (1) Invoice #1001224 amount $834.85, (2)Invoice #1101211 amount $16,542.55, (3) Invoice #0102201 amount $9,147.80, (4) Invoice #1101205 amount $9,174.80, (5) Invoice #0701206 amount $5,435.54, (6) Invoice #0701216 amount $139.20, (7) Invoice #0701228 amount $174.00 (8) Invoice #901206 amount $7784.74, (9) Invoice #0801206 amount $1,476.00, (10) Invoice #0801217 amount $1,472.40, (11) Invoice #0801225 amount $618.14, (12) Invoice #0801230 amount $618.14, (13) Invoice #0901301 amount $549.37 (14) Invoice #0901231 amount 58.20, (15) Invoice #0901220 amount $342.10 and (16) Invoice #0901305 amount $8,130.60 for a total of $62,359.42.

10

d.    DESERT POWER disputes the following contract charges from Revak that DESERT POWER has been billed or has paid: (1) Invoice #0901234 amount $134.20, (2) Invoice #0801206 amount $3,188.46, (3) Invoice #0801209 amount $5,101.44, (4) Invoice #0901319 amount $955.70, (5) Invoice #0901305 amount $8,461.10 for a grand total of $17,840.90.

e.    DESERT POWER has settled with one of the CENTRY subcontractors and has acquired their claims against CENTRY. These claims total $17,563.00 (lien of Redi Industrial) and $29,364 ( lien of Redi Industrial and Painting).

f.    DESERT POWER disputes CENTRY's claims for interest and attorneys' fees CENTRY has admitted that Revak has paid in full all of the principal sums due to CENTRY and CENTRY has accepted this payment and released Revak from further liability. Accordingly, CENTRY has no statutory basis to claim interest or attorneys' fees from DESERT POWER as to the discharged and settled Revak claim. The amount of interest claimed by CENTRY appears to include interest on amounts due from Revak, which have been paid CENTRY's attorneys' fees are clearly unreasonable and should be disallowed Upon information and belief, the fees relate not to collecting amounts allegedly due from DESERT POWER but to defending DESERT POWER's claims and collecting amounts due from Revak.

g.    DESERT POWER has incurred damages proximately caused by CENTRY's breach of its contractual obligation to paint the DESERT POWER plant Shortly after the painting was virtually the entirety of the painting work on the Plant failed. Huge chunks of paint fell off in areas all over the Plant, including the stacks, and painting on the utility piping bubbled and failed immediately upon the activation of the Plant. Other painting defects include rusting, blisters, variations in dry film thickness, peeling and pin holing, etc. The lost value of the painting jobs totals approximately $171,000.00.

h.    CENTRY knowingly filed a lien in the amount of $1,154,904.20 and failed to reduce the amount of its lien claim even though by its own admission it is owed less than $750,000.00. Upon information and belief, CENTRY is aware that its actual claims against DESERT POWER total less than $300,000.00 and that DESERT POWER has legitimate claims for overcharges, incorrect invoices and damages. Notwithstanding this knowledge, and having been

11

made aware that DESERT POWER was seeking additional financing to expand its plant CENTRY refused to reduce its lien or settle DESERT POWER's claims. CENTRYs actions, including its assertion of unreasonable and inflated claims for interest and attorneys' fees, are intended, and at all material times have been intended, to cloud DESERT POWER's title to the Real Estate and Plant and to extract economic concessions from DESERT POWER to which CENTRY is not entitled. Pursuant to U.C.A. 38-1-25 Desert Power is entitled to damages equal to the greater of: (a) twice the amount by which the wrongful lien exceeds the amount actually due; or (b) the actual damages incurred by DESERT POWER These damages total no less than $1.8 million

WHEREFORE, DESERT POWER prays that the CENTRY lien be expunged and their lien claim disallowed and that DESERT POWER recover damages against CENTRY in an amount to be determined by the Court.

54    **PROENERGY Objection and Counterclaim**

a    PROENERGY entered into an "Operation and Maintenance Services Agreement"(the "Agreement") with DESERT POWER on June 10, 2002. The Agreement was amended on September 1, 2005. A true and correct copy of the Agreement (including the 2005 amendment) is attached to the proof of claim 21-1 filed by PROENERGY SERVICES in the DESERT POWER case.

b.    The Agreement required PROENERGY to "provide qualified, competent and experienced services" required for operation and maintenance of the Plant. The amendment expanded the scope of PROENERGY's responsibilities under the original Agreement to assist DESERT POWER in the locating, evaluation, acquisition and management of engineering services, equipment and a bonded contractor; in testing, disassembly, demolition and evaluation; in major turbine maintenance; in equipment relocation and in commissioning and start-up services

c    The amendment also provided that in lieu of the management fee provided for in the original agreement PROENERGY was to be paid a project construction management fee of $649,000.00 commencing September 1, 2004, paid monthly.

d.    During the period from September 1, 2004 to February, 2006 when PROENERGY was terminated by DESERT POWER, PROENERGY breached the Agreement and caused over five million dollars of damage to DESERT POWER. PROENERGY's breaches included, without limitation,

12

(1) improper disassembly of the condenser to the GE Steam Turbine and Generator Set in direct contravention of the manufacturer's written instructions, resulting in damages in excess of $300,000, including charges for labor and expenses relating to such wrongful disassembly;

(2) improper removal of stator blades and cases in the combustion section of the GE Combustion Turbines, resulting in damages in excess of $140,000, including charges for labor and expenses relating to such wrongful disassembly;

(3) destruction of bolts, nuts and hardware in disassembling the turbines resulting in damages in excess of $120,000;

(4) misrepresentation of the status of the documentation on the heat recovery steam generator resulting in damages which have yet to be fixed;

(5) misrepresentation of the costs associated with the utilization of a large heat recovery steam generator, resulting in damages which have yet to be ascertained but which may exceed $5 million;

(6) destruction of wiring connectors to the gas skids, wiring of the combustion turbines, the Unit #1 sump system, the Unit #2 exhaust frame blower foundation and mist eliminator foundation, the Unit #2 gas control house foundation, the Unit #1 and #1 Generator exhaust duct support structures, the Unit #1 and #2 inlet duct insulation and attachments, the wing cowls on the two inlet houses and instrumentation resulting in damages that have yet to be calculated;

(7) failure to properly remove waterline heat trace elements;

(8) improper design of the main steam turbine building;

(9) recommending the purchase of an inappropriate crane, in poor condition, and thereafter not having the crane properly stored resulting in damages in excess of $750,000;

(10) failure to properly cover exhaust parts and to properly catalogue equipment that was removed or shipped resulting in damages that have yet to be ascertained;

(11) failure to properly assist DESERT POWER in the evaluation, acquisition and management of engineering services and equipment, resulting in damages that have yet to be ascertained;

e.    Each of the above failures and affirmative actions constitutes a breach of the Agreement for which DESERT POWER is entitled to actual damages proximately caused by PROENERGY's failure to perform the duties they agreed to undertake.

13

f.     DESERT POWER is entitled to judgment for damages against PROENERGY in an amount to be ascertained by the Court but no less than FIVE MILLION DOLLARS together with attorneys' fees and costs.

g.     WHEREFORE, DESERT POWER prays that PROENERGY's lien be expunged; that PROENERGY's lien claim be disallowed and the Court award judgment in favor of DESERT POWER and against PROENERGY in the amount specified above.

## AVOIDANCE AND PRESERVATION OF EVAPTECH LIEN

55.     DESERT POWER restates the allegations of paragraphs 1-54 above as though fully set forth herein.

56.     Pursuant to 11 U.S.C. Section 544 (a)(3) DESERT POWER has the rights of a bona fide purchaser of real property that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.

57.     At the time of commencement of this case EVAPTECH had not recorded its mechanic's lien against the Real Estate. Accordingly, unless the lien was subsequently filed in accordance with Utah law EVAPTECH's claim would not be payable by a bona fide purchaser.

58.     On November 13, 2006, when EVAPTECH filed its lien DESERT POWER was in a Chapter 11 proceeding.

59.     The filing of EVAPTECH's mechanic's lien constituted a "transfer" as that term is defined in 11 U.S.C. Section 101 (54) (A). 11 U.S.C. Section 549 prohibits postpetition transfers unless they are authorized by the court. EVAPTECH did not seek court authorization prior to filing its mechanic's lien.

60.     Utah law Section 38-1-7 of the Utah Code Annotated provides:

*Notice of claim--Contents--Recording--Service on owner of property*

*(1)(a)(i) Except as modified in Section 38-1-27, a person claiming benefits under this chapter shall file for record with the county recorder of the county in which the property, or some part of the property, is situated, a written notice to hold and claim a lien within 90 days after the date of final completion of the original contract under which the claimant claims a lien under this chapter*

*(ii) For purposes of this Subsection (1), final completion of the original contract means*
*(A) if as a result of work performed under the original contract a permanent certificate of occupancy is required for the work, the date of issuance of a permanent certificate of occupancy by the local government entity having jurisdiction over the construction project,*
*(B) if no certificate of occupancy is required by the local government entity having jurisdiction over the construction project, but as a result of the work performed under the original*

14

1   *contract an inspection is required as per state-adopted building codes for the work, the date of the*
2   *final inspection for the work by the local government entity having jurisdiction over the*
    *construction project, or*
3   *(C) if with regard to work performed under the original contract no certificate of*
    *occupancy and no final inspection are required as per state-adopted building codes by the local*
4   *government entity having jurisdiction over the construction project, the date on which there*
    *remains no substantial work to be completed to finish the work on the original contract*
5

6   61.    The EVAPTECH contract did not require either a certificate of occupancy or a final

7   inspection; accordingly, the 90 day period for filing EVAPTECH's lien claim began to run when

8   EVAPTECH completed its work under its contract. EVAPTECH completed its work on or before

9   August 31, 2006.

10
11  62.    EVAPTECH has failed to perfect its lien against the Real Estate by timely filing a

12  Notice in accordance with Section 38-1-7 of the Utah Code.

13  63.    Bankruptcy Code Section 551 automatically preserves any transfer avoided under

14  section 549 of the Bankruptcy Code for the benefit of the estate with respect to property of the

15  estate. DESERT POWER requests that the EVAPTECH lien be preserved for the benefit of the

16  estate as to the Real Estate and any proceeds from sale or other recoveries that constitute property

17  of the estate.

18
19  64.    WHEREFORE, DESERT POWER prays that the EVAPTECH lien be avoided

20  pursuant to 11 U.S.C. Section 549 and preserved for the benefit of the estate pursuant to 11 U.S.C.

21  Section 551.

22

23

24
## REQUEST FOR DECLARATORY JUDGMENT AS TO PRIORITY OF LIEN CLAIMS
25

26  65.    DESERT POWER and LEASING reallege the contents of paragraphs 1-64 above as

27  though fully set forth herein.

28

15

66.     DESERT POWER and LEASING seek a determination from this Court pursuant to 28 U.S.C. Section 2201 and 11 U.S.C. Section 105 fixing the priority and extent of each of the Defendants with respect to the Real Estate and the Equipment and the ownership claims of PCE with respect to the office equipment and scaffolding located at the site for which DESERT POWER has paid. LEASING seeks a determination from this Court pursuant to 28 U.S.C. Section 2201 and 11 U.S.C. Section 105 regarding the validity and extent of the lien claims of each of the Defendants with the exception of BANK on any asset of LEASING listed on Exhibit "B".

67.     The Utah Code provides:

§ 38-1-4 Amount of land affected--Lots and subdivisions--Franchises, fixtures, and appurtenances

*The liens granted by this chapter shall extend to and cover so much of the land whereon such building, structure, or improvement shall be made as may be necessary for convenient use and occupation of the land. In case any such building shall occupy two or more lots or other subdivisions of land, such lots or subdivisions shall be considered as one for the purposes of this chapter. The liens provided for in this chapter shall attach to all franchises, privileges, appurtenances, and to all machinery and fixtures, pertaining to or used in connection with any such lands, buildings, structures, or improvements*

68.     STANTEC, PROENERGY, CECO, PCE, FABRICATION, CST, AQUATECH, ATLANTIC, ANDERSON, ALLIED and EVAPTECH (the "Junior Claimants") each filed their mechanics' liens after September 6, 2005, the date BANK filed its deed of trust. BANK asserts that its lien claim is prior and superior to the liens of the Junior Claimants. Certain of the Junior Claimants have asserted that their lien claims are superior to the BANK lien because at least one of the Junior Claimants performed visible improvements on the Real Estate that would put the BANK on notice of their liens. PCE claims that it owns various items of office equipment and computers at the Plant, although it has provided no proof of purchase.

69.     The Utah Code provides:

*§ 38-1-5. Priority--Over other encumbrances*

16

*The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, improvement or structure was commenced, work begun, or first material furnished on the ground, also over any lien, mortgage or other encumbrance of which the lien holder had no notice and which was unrecorded at the time the building, structure or improvement was commenced, work begun, or first material furnished on the ground.*

70    The Utah Code also provides that certain liens are on "equal footing" regardless of the time the liens were filed.  UCA § 38-1-10  Laborers' and materialmen's lien on equal footing regardless of time of filing

*The liens for work and labor done or material furnished as provided in this chapter shall be upon an equal footing, regardless of date of filing the notice and claim of lien and regardless of the time of performing such work and labor or furnishing such material*

71    DESERT POWER and LEASING are in the process of selling the Real Estate, Plant and Equipment as well as the equipment owned by DESERT POWER, including equipment which PCE claims to own pursuant to 11 U.S.C. Section 363 (b) (1) and (f) free and clear of liens, claims and encumbrances.  The liens, claims and encumbrances will attach to any proceeds of sale in the order in which they would have been allowed had the property not been sold.

72    Accordingly, it is urgent that the Court determine the validity and priority of each of the Defendants' claims against the Real Property, Plant and Equipment. An actual controversy exists as to the validity, priority and extent of the liens and claims of each of the Defendants.

73    DEBTORS are entitled to recover reasonable attorneys fees in connection with obtaining the declaratory judgment herein requested

WHEREFORE the DEBTORS respectfully request the Court to enter judgment in favor of the DEBTORS as follows:

1.    granting DEBTORS' objections to the liens and claims of Tooele County, PCE Constructors, Stantec and Anderson;

17

2.     expunging the liens and awarding DESERT POWER damages against Centry and Prognergy as requested, together with interest and attorneys fees as allowed by law;

3.     removing the lien of Stantec;

4.     avoiding and preserving the lien of Evaptech;

5.     entering a declaratory judgment regarding the validity, priority and extent of the liens and ownership claims of all Defendants as to the assets of DEBTORS;

6.     awarding costs and attorneys fees as allowed to DEBTORS;

7.     for such other and further relief as is just.

SUBMITTED March 9, 2007

McDONALD CARANO WILSON LLP

By: ___/s/ Kaaran E. Thomas_____
        Kaaran E. Thomas (NV Bar No. 7193)

*Attorney for Debtors and Debtors-in-Possession*

18